IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JORDAN and JENNIFER DONTOS and CRAVE, LLC, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:11-CV-0553-K |
| VENDOMATION NZ LIMITED., et al., | § § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are: (1) Defendants John Halpern and George Parkman Denny, III's, Motion to Dismiss the [Fourth] Amended Complaint for Lack of Personal Jurisdiction under Fed. R. Civ. P. 12(b)(2) and, in the Alternative, Failure to State a Claim under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b) (Doc. No. 94); (2) Defendant Vendomation, LLC's Motion to Dismiss [Fourth] Amended Complaint Pursuant to Fed. R. Civ. P. 9(b), 12(b)(2), and 12(b)(6) (Doc. No. 96); (3) Defendant Vendomation Securities Limited's Motion to Dismiss [Fourth] Amended Complaint Pursuant to Fed. R. Civ. P. 9(b), 12(b)(2), and 12(b)(6) (Doc. No. 99); and (4) Defendant Vendomation NZ Limited's Motion to Dismiss [Fourth] Amended Complaint Pursuant to Fed. R. Civ. P. 9(b), 12(b)(2), and 12(b)(6) (Doc. No. 40). (Pursuant to an order from this Court, Plaintiffs filed their Fourth Amended Complaint (Doc. No. 124) after Defendants' filed their motions to dismiss the third amended complaint. With no

objection from Defendants, the Court will treat their pending motions to dismiss as pertaining to Plaintiffs' Fourth Amended Complaint, rather than the Third Amended Complaint as originally styled.)   The Court has carefully considered the motions, responsive briefing, appendices, and applicable law.  For the following reasons, the Court **GRANTS** each of the motions on the grounds that the Court cannot exercise personal jurisdiction over any of these Defendants.

## I.    Factual and Procedural Background

The Court was forced to compile a factual background based on conclusory and often times confusing factual allegations made by the Plaintiffs.  Thus, it is important to note that this factual background is in no way a definitive statement of the facts in this case; instead, this is the result of the Court's generous construction of the complaint for purposes of this motion.  As is required under the standard for motions to dismiss, this Court gave deference to the Plaintiffs' factual allegations at every opportunity.

Plaintiffs Jordan and Jennifer Dontos formed Crave LLC (collectively "Plaintiffs") to operate a franchise of vending machines.  In 2007, Plaintiffs entered into a franchise deposit agreement with 24Seven Vending (USA) Limited ("24Seven"), upon the assurance Plaintiffs would receive two specific profitable and established routes in the Dallas area.  24Seven was either the parent or sister company of the VTL Group Limited and Vending Technology Limited (collectively "VTL Group"), both New Zealand companies.  Relying on this promise, Plaintiffs deposited the money per the agreement, moved to Texas, and ultimately entered into a franchise agreement with 24Seven, paying

franchise fees.  Despite the earlier promise, 24Seven never tendered the preferred routes to Plaintiffs and, instead, attempted to induce them to accept other inferior routes.  It is unclear from the record which routes Plaintiffs ultimately accepted and/or received.

In August 2007, the VTL Group went into receivership in New Zealand.  Plaintiffs contend their franchise agreement, including the franchise deposit and fees, was "switched briefly" to a newly formed company, Bacon Whitney.  Defendants John Halpern and George Parkman Denny, III ("Halpern" and "Denny", respectively) were both managing members and majority interest owners in this company.  Plaintiffs allege Bacon Whitney began operating under the name 24/Seven and purchased all but two or three of the Texas franchises previously owned by 24Seven and/or the VTL Group.  Moreover, in November 2007, non-party Mark Bruno ("Bruno"), acting as Bacon Whitney's spokesman, held a meeting in Dallas with the Texas franchisees, including Plaintiffs, to discuss being a Bacon Whitney franchisee.  Soon after the meeting with Bruno, Plaintiffs were rejected as Bacon Whitney franchisees.

Plaintiffs then filed suit in Texas state court against several parties, including Mark Bruno, the VTL Group and Bacon Whitney.  The Texas trial court sustained Bruno's special appearance and dismissed all claims against him, which was affirmed on appeal.  Plaintiffs contend they ultimately succeeded in securing a judgment of $6 million against the VTL Group and Bacon Whitney.

At some point thereafter, Bacon Whitney went into receivership in Massachusetts, and its assets, which included five Texas franchises, were transferred to a newly formed

company, Intellivend.  The assets were purchased for a $1.25 million note which, Plaintiffs aver, was then transferred by the Bacon Whitney receiver to Defendants Halpern and Denny without sufficient consideration.  At some later point, Intellivend filed for bankruptcy protection.  According to Plaintiffs, Vendomation Defendants NZ Limited, Vendomation, LLC, and Vendomation Securities Limited (collectively "Vendomation Defendants") were one of Intellivend's biggest creditors.

Plaintiffs contend that while these assets were being transferred to various companies, Lisle McErlane (a named defendant in this case who has since been dismissed) telephoned Plaintiffs in January 2009, offering "to settle all differences between them and the 'VTL Group'" for a $500,000 payment.  Although Plaintiffs accepted the offer later that month, the $500,000 settlement of the $6 million judgment never came to fruition.

Plaintiffs filed suit in this Court on March 17, 2011, on diversity grounds, asserting claims for fraudulent transfer, fraud, negligent misrepresentation, and civil conspiracy/aiding and abetting.  Before any Defendant had answered, Plaintiffs filed an amended complaint the very next day on March 18th.  Defendants then filed motions to dismiss the complaint on various grounds, and Plaintiffs moved for leave to file a Second Amended Complaint.  The Court  granted Plaintiffs' motion for leave to amend and, therefore, denied Defendants' motions to dismiss.  Plaintiffs filed their Second Amended Complaint.  Upon review, the Court determined Plaintiffs had failed to properly allege the citizenship of Defendant Vendomation, LLC, and Plaintiff Crave, LLC, and ordered Plaintiffs to file a Third Amended Complaint with this required information.  Plaintiffs

filed a Third Amended Complaint, and Defendants again filed motions to dismiss.  The Court's review of the Third Amended Complaint revealed Plaintiffs still had not properly alleged the citizenship of Defendant Vendomantion, LLC.  Once again, the Court ordered Plaintiffs to file an amended complaint only as to the citizenship of Defendant Vendomation, LLC, and notified the Defendants it would convert their pending motions to dismiss the Third Amended Complaint as motions to dismiss the Fourth Amended Complaint (absent any objection from a defendant).  Plaintiffs filed their Fourth Amended Complaint, and no Defendant filed an objection.  The Plaintiffs' Fourth Amended Complaint is now the subject of these pending motions.

## II.    Motion to Dismiss

### A.    Legal Standard

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 592 (5th Cir. 1999); *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994).  When there is no evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a *prima facie* case that personal jurisdiction exists; proof by a preponderance of the evidence is not required. *Int'l Truck & Engine Corp. v. Quintana*, 259 F.Supp.2d 553, 556 (N.D. Tex. 2003)(Lindsay, J.)(citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)).  The plaintiff satisfies her burden by producing admissible evidence which, if believed, would support the existence of personal jurisdiction. *WNS,* 884 F.2d at 203-04. In making its determination, the

court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of recognized discovery methods. *Allred v. Moore* & *Peterson*, 117 F.3d 278, 281 (5th Cir. 1997). The court will take the allegations of the complaint as true, except where they are controverted by opposing affidavits, and all factual conflicts are resolved in favor of the plaintiff. *Gardemal*, 186 F.3d at 592; *Wilson*, 20 F.3d at 648. While this is a liberal standard, it "does not require the court to credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

In considering whether the court has personal jurisdiction over a nonresident defendant, the court must consider: (1) whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant; and, if so, (2) whether the exercise of personal jurisdiction is consistent with due process under the United State Constitution. *Mink v. AAAA Dev. LLC,* 190 F.3d 333, 335 (5th Cir. 1999). The Supreme Court of Texas has interpreted the state's long-arm statute "to reach as far as the federal constitution permits." *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). Therefore, this Court need only address whether the exercise of personal jurisdiction over the nonresident defendant would be consistent with the Due Process Clause of the Fourteenth Amendment. *Mink*, 190 F.3d at 335-36.

A court may exercise personal jurisdiction over a nonresident defendant under the Due Process Clause "when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the

forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)(quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)).

A nonresident defendant's "minimum contacts" can give rise to general or specific personal jurisdiction. *Mink*, 190 F.3d at 336. When the nonresident defendant's contacts with the forum state are unrelated to the plaintiff's cause of action but are, instead, "continuous and systematic", there is general personal jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 9 (1984); *see Mink*, 190 F.3d at 336. In contrast, when the cause of action either arises from or is directly related to the nonresident defendant's contacts with the forum state, there is specific personal jurisdiction. *Helicopteros*, 466 U.S. at 414 n. 8. The nonresident defendant's availment of the benefits and protections of the forum state must be such that the defendant "should reasonably anticipate being haled into court" there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This requirement of purposeful availment acts to ensure that a defendant's "'random, fortuitous, or attentuated' contacts" or the "unilateral activity of another party or a third person" will not result in the defendant being haled into a jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)(internal citations omitted).

As for the second question of whether the traditional notions of fair play and substantial justice would be offended, the court considers: (1) the burden of the

defendant; (2) any interests of the forum state; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's concern and interest in efficiently resolving controversies; and (5) the shared interest of the states in advancing fundamental substantive social policies. *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 113 (1987).

## A.    Lack of Personal Jurisdiction

In their Fourth Amended Complaint, Plaintiffs assert these nonresident Defendants "have made both general and specific contacts with the State of Texas and have thereby conferred jurisdiction over their persons in a Texas court."

### 1.    Conspiracy Jurisdiction

At the outset, the Court must reject Plaintiffs' "conspiracy jurisdiction" argument. In their responsive briefing, Plaintiffs make a generalized argument that each Defendant acted "through agents and co-conspirators, in the state of Texas;" therefore, "conspiracy jurisdiction" permits the co-conspirator's contacts with the forum state to be attributed to the nonresident defendant for purposes of personal jurisdiction. In support of this argument, Plaintiffs cite the Court to two district court opinions from the District of Columbia. First, Plaintiffs make no specific argument as it relates to this case; there is no identification of who exactly the co-conspirators are, which specific actions these co-conspirators took, and to which Defendants their actions are attributable. Even so, the Fifth Circuit does not recognize any such conspiracy jurisdiction. The Fifth Circuit has held that a plaintiff must establish each defendant individually, not simply as part of a

conspiracy, had minimum contacts with the forum state.  *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999); *see Delta Brands Inc. v. Danieli Corp.*, 99 Fed.Appx. 1, at *5 (5th Cir. 2004).  Likewise, this Court has issued recent opinions following this binding precedent, as well as citing the Texas Supreme Court, to conclude that each defendant's contacts must be analyzed individually, outside of any alleged conspiracy, to determine if personal jurisdiction exists.  *See Eagle Metal Products, LLC v. Keymark Enterprises, LLC*, 651 F.Supp.2d 577, 593 (N.D. Tex. 2009)(Lynn, J.); *Weinberg v. Nat'l Football League Players Ass'n*, 3:06-CV-2332-B, 2008 WL 4808920, at *5 (Nov. 5, 2008)(Boyle, J.)(citing *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995)).  Therefore, the Court rejects Plaintiffs' argument that each Defendant can be subject to specific jurisdiction solely because they participated in an alleged conspiracy in which a co-conspirator had contacts with Texas.

### 2.    Contacts through Agency Relationship

The Court now turns to Plaintiffs' attempt to impute a third-party's forum contacts to these non-resident Defendants for the purpose of establishing jurisdiction.  Plaintiffs argue Lisle McErlane, Brad Camac, Mark Bruno, and Erica Hannam were the agents of some or all of the Defendants, so any contacts these other parties had with Texas can be imputed to the Defendants.  Because this case is before the Court on diversity grounds, the Court looks to Texas law on agency.  It is well established in Texas that "[a]gency is the consensual relationship between two parties when one, the agent, acts on behalf of the other, the principal, and is subject to the principal's control."  *Happy Indus. Corp. v.*

*Am. Specialities, Inc.*, 983 S.W.2d 844, 852 (Tex. App.—Corpus Christi1998, pet. dism'd w.o.j.) (citing *Schultz v. Rural/Metro Corp.*, 956 S.W.2d 757, 760 (Tex. App.— Houston [14th Dist.] 1997, no pet.)).  The Texas Supreme Court held that "Texas law does not presume agency, and the party who alleges it has the burden of proving it." *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007).  To establish agency, the plaintiff must establish that "the principal has both the right: (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish the task." *Happy Indus.*, 983 S.W.2d at 852.

First, Plaintiffs argue that McErlane "upon information and belief" was acting all along as an agent for each Defendant, although "his principal was undisclosed at the time."  Plaintiffs argue any contacts McErlane had with Texas should be imputed to all these Defendants.  Plaintiffs do not, however, specify which forum contacts McErlane made as an agent which should be imputed to the Defendants.  Nevertheless, the Court's thorough review of the record reveals possible contacts could include McErlane's January 2009 phone call to and follow-up "correspondence" with Plaintiffs, as well as his emails, phone calls, invoices, and in-person meetings in Texas with the five Texas franchisees. Even were the Court to assume Plaintiffs seek to impute all of McErlane's conduct or activity, Plaintiffs entirely fail to meet their burden of proving agency.  Plaintiffs' complaint simply alleges McErlane was an agent for all the Defendants; "his principal was undisclosed but, upon information and belief, it was all the Defendants acting in concert and conspiracy."  No other factual allegation is made in an attempt to show an actual

agency relationship existed between McErlane and any of the Defendants; certainly nothing to show any Defendant was the principal and that McErlane was subject to their control.

Plaintiffs do not direct or cite the Court to any evidence of agency; but, the Court has reviewed the entire record and concludes that, at most, the only possible supporting evidence comes from the sworn affidavit of Christopher Rollins, former Chief Development Officer for Bacon Whitney and former President of Intellivend, submitted by Plaintiffs' in their appendix.  Rollins testified that McErlane, "purporting to be an agent and employee of the Vendomation [Defendants] Companies," traveled to Dallas at least twice and was told to conduct at least two meetings with the Texas franchisees "pursuant to [ ] instructions of Halpern and Denny."  Although admittedly more than a mere allegation of "upon information and belief" as found in the complaint, this affidavit falls far short of establishing an agency relationship between McErlane and any Defendant.  This is nothing more than Mr. Rollins' statement that McErlane traveled to Texas "purporting to be an agent and employee of" Vendomation Defendants and that McErlane conducted two meetings with the Texas franchisees "pursuant to [ ] instructions of Halpern and Denny."  *See Panda Brandywine*, 253 F.3d at 869 (the court is not required "to credit conclusory allegations, even if uncontroverted.").  Mr. Rollins' affidavit fails to establish there was a relationship in which any of the Defendants were the principal and McErlane was the agent, or that any Defendant had the right to assign McErlane a task and to control the means and details of the process by which McErlane was to accomplish

the task.  *See Happy Indus.*, 983 S.W.2d at 852.  To find Plaintiffs sufficiently established agency as to McErlane and any Defendant would require this Court to presume agency, which it will not and cannot do.  *See IRA Res.*, 221 S.W.3d at 597.  Plaintiffs have failed to meet their burden to establish that McErlane was an agent of any of these Defendants. These actions, then, would be those of a third-party, McErlane, claiming to have a relationship with one or more of the Defendants.  The Supreme Court has held, "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *see Helicopteros*, 466 U.S. at 417 ("Such unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.").

Plaintiffs also allege Mark Bruno and Brad Camac were "agents, servants and employees" of Defendants who performed fraudulent actions in Texas as part of the conspiracy to defraud Plaintiffs.  Plaintiffs claim Brad Camac used the names of Defendants Halpern and Denny to "bolster the financial credibility" of the VTL Group. Plaintiffs claim Mark Bruno, as a spokesman for Bacon Whitney, assured Plaintiffs during a meeting in Dallas that Bacon Whitney was a financially sound company and "had the backing and management of [Defendants] Halpern and Denny."  Other than these conclusory allegations, Plaintiffs provided absolutely no evidence to establish agency on the part of either man as to any Defendant.  *See Happy Indus.*, 983 S.W.2d at 852.  While

the Court must take the allegations of the complaint as true, the Court does not have to credit conclusory allegations. *See Panda Brandywine*, 253 F.3d at 869. Plaintiffs failed to meet their burden to establish agency as to Brad Camac or Mark Bruno and any of the Defendants.

More importantly, as to Mark Bruno ("Bruno"), a Texas state court has already concluded it could not exercise personal jurisdiction over him. As previously mentioned, Plaintiffs filed suit in Texas state court against Bacon Whitney, the VTL Group, and Bruno among others. The basis of their state court claims against Bruno involve the same conduct Plaintiffs attribute to him in this case. Bruno specially appeared in the Texas court case, objecting to the court's exercise of personal jurisdiction over him. The court conducted a hearing, granted his special appearance and dismissed the claims against him. Plaintiffs appealed the trial court's jurisdictional ruling. The appellate court affirmed the trial court's ruling, determining there was no support for the exercise of personal jurisdiction over Bruno. *See Dontos et al. v. Bruno*, 339 S.W.3d 777, 780-81 (Tex. App—Dallas 2011, no pet.). The Fifth Circuit has held a Texas state court's dismissal for lack of personal jurisdiction precludes the relitigation of this same issue in federal court under the doctrine of collateral estoppel. *Deckert v. Wachovia Student Fin. Services, Inc.*, 963 F.2d 816, 818-19 (5th Cir. 1992). While Plaintiffs did not name Bruno as a defendant in this case, they seek to impute his contacts with Texas to any and all of these Defendants via agency to support the exercise of personal jurisdiction over them. These contacts are the same as a Texas state court has already determined were insufficient to

support the exercise of personal jurisdiction over Bruno.  As a corollary then, this Court concludes that collateral estoppel would preclude what is in essence the relitigation of the sufficiency of Bruno's contacts with Texas to support personal jurisdiction, albeit as imputed to another party.  *See id.*

Lastly, Plaintiffs' did not make any specific argument that the alleged contacts of Erica Hannam, manager of the Vendomation Defendants, should be imputed to any or all of the Vendomation Defendants through agency.  However, even if Plaintiffs had, the Court has thoroughly examined the record and this argument would fail as well.

For the foregoing reasons, the Court finds Plaintiffs did not meet their burden of establishing agency as to McErlane, Bruno, or Camac, and any of the Defendants. Additionally, collateral estoppel would preclude this Court from considering Bruno and his contacts as a Texas state court has found him not to be amenable to suit in Texas based on those same contacts.

### 3.    General Jurisdiction

When the nonresident defendant's contacts with the forum state are unrelated to the plaintiff's cause of action but are, instead, "continuous and systematic", there is general personal jurisdiction.   *Helicopteros*, 466 U.S. at 414 n. 9; *see Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)("non-resident defendant's contacts with the forum state are substantial, continuous, and systematic.").   This requires the plaintiff to produce evidence of extensive contacts between the nonresident defendant and the forum state.  *Johnston*, 523 F.3d at 609 ("[V]ague and overgeneralized assertions

that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction."). Plaintiffs have fallen far short of satisfying this difficult test. *Id.* at 611-13 (reviewing case history to show difficultly of establishing general jurisdiction, comparing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447-49 (1952) with *Helicopteros*, 466 U.S. at 418-19). At best, Plaintiffs' allegations are vague and overgeneralized. Plaintiffs fail to specifically identify for the Court contacts any Defendant had with Texas which were "substantial, continuous, and systematic" so they would confer general jurisdiction. There is no evidence, let alone sufficient evidence, of extensive contacts any Defendant had with Texas. *See Johnston*, 523 F.3d at 609.

Moreover, any contacts with Texas, as identified by the Court, stem from the actions of McErlane, Hannam, Bruno, and Camac, and not the Defendants themselves. The Court has already concluded Plaintiffs failed to establish agency as to any of these third-parties and the Defendants; so none of their forum contacts can establish general jurisdiction over these Defendants. But, even if agency had been established, these contacts are not substantial enough in nature, nor are they sufficiently systematic or continuous to confer general jurisdiction. *Johnston*, 523 F.3d at 609 (plaintiffs must adduce evidence of extensive contacts between the nonresident defendant and the forum state). In *Helicopteros*, the Supreme Court found that Texas courts has no general jurisdiction over a defendant even when the defendant had purchased numerous helicopters (almost 80% of its fleet) and more than $4 million of helicopter parts from a Texas-based company, sent company employees and prospective pilots to Texas for

training and consultation several times, received over $5 million in payments from a Texas bank, and sent its agents to Texas to negotiate contracts. *Helicopteros*, 466 U.S. at 1870-74. Plaintiffs have not presented any contacts which even come close to those found inadequate in *Helicopteros*.

In their responsive briefing, Plaintiffs allege for the first time that all three Vendomation Defendants own five franchises in Texas, including the franchise agreements and vending machines. Plaintiffs do not clearly argue this supports the exercise of general jurisdiction over the Vendomation Defendants, but the Court will address this as a basis for doing so in an abundance of caution. First, Plaintiffs do not distinguish between any of the three Vendomation entities as to ownership. The record establishes, however, that Defendant Vendomation Securities Limited's ("VSL") which came into possession of numerous franchises, including five located in Texas, in December 2010, after taking back its security interests from a bankruptcy trustee. Other than referring to the ownership of these franchises as a Texas contact, Plaintiffs make no further argument and present no evidence establishing how this franchise ownership alone would support the exercise of general jurisdiction over Defendants VSL. Nor do Plaintiffs argue how this ownership could be imputed to the other two Vendomation Defendant entities. Again, Plaintiffs fall far short of showing extensive contacts between any of the three Vendomation Defendants and Texas to satisfy the difficult "continuous and systematic" contacts test to support general jurisdiction. *See Johnston*, 523 F.3d at 610-13.

The Court holds it cannot exercise general jurisdiction over any of the Defendants.

4.    **Specific Jurisdiction**

When a nonresident defendant has "purposefully directed" its activities at residents of the forum state and the plaintiff's claims "arise out of ir relate to" those activities, a court may exercise specific jurisdiction.  *Burger King Corp.*, 471 U.S. at 472.   In determining whether to exercise specific jurisdiction, the Court applies a three part test: (1) did the defendant have minimum contacts with the forum state, in other words, purposely direct its activities toward the forum state or purposely avail itself of the privilege of conducting activities there; (2) does the plaintiff's cause of action arise out of or result from the defendant's forum-related contacts; (3) would the exercise of personal jurisdiction be fair and reasonable.  *See Guidry*, 188 F.3d at 624-25 (internal citations omitted).  If it creates a "substantial connection" with the forum state, "even a single act can support jurisdiction." *Burger King Corp.*, 471 U.S. at 476 n. 18 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).  But the contact cannot be simply "'random,' 'fortuitous,' or 'attenuated'" as that is not sufficient to establish minimum contacts. *Burger King*, 471 U.S. at 475.  When a plaintiff asserts multiple causes of actions arising out of different contacts multiple defendants had with the forum, the plaintiff must establish specific jurisdiction as to each defendant and as to each claim.  *See Calder v. Jones*, 465 U.S. 783, 790 (1984)(multiple defendants); *Sieferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006)(multiple causes of action).

Plaintiffs assert claims against all Defendants for fraudulent transfer, fraud, negligent misrepresentation, and conspiracy.  Plaintiffs must show that the alleged

fraudulent transfer, alleged fraud, alleged negligent misrepresentation, and alleged conspiracy arose out of each individual Defendant's contacts with Texas. *See Guidry*, 188 F.3d at 625; *Delta Brands*, 99 Fed.Appx 1, at *5. Because Plaintiffs do not differentiate between the activities/conduct of Defendants Halpern and Denny, the Court will address them together. Likewise, Plaintiffs group the three Vendomation Defendant entities together in their allegations, so the Court will address those three Defendants together as well.

The Court notes that Plaintiffs' complaint is often unclear and confusing, leaving the Court to generously construe it. Additionally, Plaintiffs make no clear indication as to what factual allegations support each claim, instead incorporating all prior factual allegations.

### a.    Fraudulent Transfer

Plaintiffs' first claim is fraudulent transfer involving each Defendant. Plaintiffs make the following allegations as to their fraudulent transfer claim: "[T]he assets of Bacon Whitney have been sold and/or transferred to Halpern and Denny and Vendomation whose officers, directors and shareholders were also officers, directors and shareholders of the VTL Group and Bacon Whitney and, obviously insiders for less than equivalent value thus rendering the VTL Group and Bacon Whitney insolvent and unable to pay its creditor." Plaintiffs allege that after they received a $6 million judgment against Bacon Whitney and "various of the VTL Group component companies," Bacon Whitney went into receivership in Massachusetts. Pls. Fourth Amd. Compl. at p. 4. The assets of

"Bacon Whitney <u>and/or</u> the VTL Group" were then transferred to another company, Intellivend, for a $1.25 million note "which was then transferred by the receiver (with, apparently [sic] no consideration) to Halpern and Denny." *Id.* (emphasis added). Plaintiffs then allege Intellivend filed for bankruptcy, and the Vendomation Defendants, seemingly as one unit, "was one of the biggest creditors and so. . . Defendants went, in the person of McErlane and Erica Hannam, by letters, emails, invoices and in person to (among other states) Texas to convince the (five in the DFW area) franchisees that Vendomation owned their franchise agreements and vending machines!" *Id.* In addition, McErlane initiated a phone call to Plaintiffs, offering to settle their judgment against the VTL Group for $500,000, and this was followed up with other correspondence. *Id.* Despite McErlane's offer to settle the judgment, Plaintiffs allege he was merely acting in conspiracy with and as an agent for all the other Defendants so they could strip Bacon Whitney and/or the VTL Group of their assets before Plaintiffs could satisfy their judgment. *Id.* at 4-5.

Although never clarified to the Court, as best the Court can discern from Plaintiffs' factual allegations of the fraudulent transfer, as well as their responsive briefing, the fraudulent transfer claim centers on the purchase of Bacon Whitney's assets by Intellivend for a $1.25 million note which was subsequently transferred to Defendants Halpern and Denny without sufficient consideration.

In their complaint, Plaintiffs list the elements of a fraudulent transfer claim, although incorrectly, but fail to cite the statute under which the cause of action arises.

Presumably, Plaintiffs rely on section 24.005(a) of Texas Uniform Fraudulent Transfer

Act ("TUFTA") which provides:

> A transfer made or obligation incurred by a debtor is fraudulent as
> to a creditor, whether the creditor's claim arose before or within a
> reasonable time after the transfer was made or the obligation was incurred,
> if the debtor made the transfer or incurred the obligation:
> (1) with actual intent to hinder, delay, or defraud any creditor of the
> debtor; or
> (2) without receiving a reasonably equivalent value in exchange for
> the transfer or obligation, and the debtor:
> (A) was engaged or was about to engage in a business or
> transaction for which the remaining assets of the debtor were unreasonably
> small in relation to the business or transaction; or
> (B) intended to incur, or believed or reasonably should have
> believed that the debtor would incur, debts beyond the debtor's ability to
> pay as they became due.

TEX. BUS. & COM. CODE ANN. § 24.005(a)(West 2009).  The Court will address each of

the Defendants contacts as they relate to this claim.

### 1)      Defendants Halpern and Denny

The Court cannot conclude that any Texas contacts gave rise to this fraudulent

transfer claim.  Plaintiffs do not provide any evidence of contacts Defendants Halpern

and Denny themselves had with Texas which would give rise to this claim.  Nor do

Plaintiffs allege the fraudulent transfer occurred in Texas.  Again, Plaintiffs rely on the

forum contacts of McErlane, through agency, to be imputed to these Defendants .  The

Court has already concluded that Plaintiffs did not meet their burden of establishing

McErlane was the agent of Defendants Halpern and Denny.

Moreover, the Court could not conclude that McErlane's contacts–the phone call and other "correspondence" with Plaintiffs, as well as his communications and meetings with the five Dallas-Fort Worth franchisees–could give rise to Plaintiffs' fraudulent transfer claim.

The Court finds Defendants Halpern and Denny did not have sufficient minimum contacts with Texas, nor would any alleged contacts have given rise to this claim that would make Defendants Halpern and Denny subject to suit in Texas for fraudulent transfer.

### 2)    Vendomation Defendants

Plaintiffs allege the Vendomation Defendants participated as "insiders" to this fraudulent transfer.  However, the record calls into question whether the fraudulent transfer claim could have even involved the Vendomation Defendants.  According to Plaintiffs' own recitation of the facts in their complaint and supporting evidence, the fraudulent transfer allegedly first began around January 2009, when McErlane initially offered Plaintiffs a chance to "settle their differences" with the VTL Group in his phone call.  In their complaint, Plaintiffs allege that the Vendomation Defendants were not formed until or after December 2010.  Without any further explanation from Plaintiffs, the Court does not see how the Vendomation Defendants, formed around December 2010, participated in a fraudulent transfer which began in January 2009.  The Court finds Plaintiffs' own evidence calls into question whether any of the Vendomation Defendants could have been party to the actual transfer.

Even if the Court were to assume these Defendants could have participated, Plaintiffs have failed to submit evidence that the Vendomation Defendants had sufficient contacts with Texas or any contacts which would have given rise to this claim.  Again, Plaintiffs argue agency, as to McErlane, satisfies the contacts and supports specific jurisdiction.  This argument fails for the same reasons as the Court has repeatedly stated–Plaintiffs failed to establish agency, and none of the contacts, even if imputed, give rise to a fraudulent transfer claim.  Although Plaintiffs do make this specific argument, the actions of Erica Hannam, a manager for all three Vendomation entities, also cannot support jurisdiction.  As the Court already found, Plaintiffs did not establish agency as to Hannam and any of the Vendomation Defendants.  Moreover, Plaintiffs do not specify exactly what contacts she had with Texas residents; Plaintiffs merely lump her with McErlane in their allegations that they both sent invoices and emails.  There is also no allegation as to the content of either the invoices or the emails.  Although a single act can support specific jurisdiction, it must create a "substantial connection" with the forum state." *Burger King Corp.*, 471 U.S. at 476 n. 18 (quoting *McGee*, 355 U.S. at 223).  As presented by Plaintiffs, these invoices and emails do not create a substantial connection with Texas.  *See id.*  Furthermore, none of these contacts could even arguably give rise to Plaintiffs' fraudulent transfer claim as none of Hannam's contacts could satisfy any element of a fraudulent transfer claim.

The Court finds the Vendomation Defendants did not have sufficient minimum contacts with Texas, nor would any possible contacts have given rise to this claim such

that the Vendomation Defendants should be subject to suit in Texas for fraudulent transfer.

### b.     Fraud

Plaintiffs allege all Defendants participated in fraud because the "agreement" was a "ruse" to keep Plaintiffs from collecting their state court judgments against VTL Group and Bacon Whitney while those assets were fraudulently transferred.  Plaintiffs further contend "[t]he entire scheme from the sale of the franchise to Plaintiffs by 24Seven to this day constitutes a fraud which was participated in by Halpern and Denny and the Vendomation companies, as detailed above, causing damages to Plaintiffs."

Plaintiffs fail to set forth what type of fraud they allege, statutory or common-law. In order to address jurisdiction, the Court will construe Plaintiffs' complaint as alleging a common law fraud claim since Plaintiffs make absolutely no mention of any particular statute which Defendants may have violated.  As set forth by the Texas Supreme Court, the elements of fraud are: (1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the person making it knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the person made it with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party then suffered injury. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of America*, 341 S.W.3d 323, 337 (Tex. 2011).

The only specific activity Plaintiffs rely upon in alleging fraud involves McErlane's phone call offering Plaintiffs a $500,000 settlement, as well as the follow-up correspondence.  Plaintiffs allege this was a "ruse" to keep them from collecting on their state court judgments against Bacon Whitney and/or the VTL Group while those assets were transferred.  McErlane's action is insufficient to support this Court exercising personal jurisdiction over any of these Defendants.  The Court has already concluded Plaintiffs wholly failed to establish agency, so none of McErlane's activity or conduct in or directed at Texas can be imputed to any of the Defendants for jurisdictional purposes.  Plaintiffs do not provide evidence or even allege any of the Defendants had any activity in or directed at Texas which would give rise to this fraud claim.

Along with their specific claim related to the settlement offer, Plaintiffs also make a general allegation that "[t]he entire scheme . . . was a fraud which was participated in by Halpern and Denny and the Vendomation companies, as detailed above."  Plaintiffs make no attempt to tie any specific activity or conduct possibly giving rise to this general allegation; just a blanket incorporation of the entire factual allegations.  Although the Court has been generous with its liberal construction of Plaintiffs' complaint, the Court will not indulge this second allegation within Plaintiffs' fraud claim.  The facts alleged are simply insufficient for this Court to determine whether any activity directed at or in Texas gave rise to this claim such that the Court can exercise personal jurisdiction over these Defendants.

The Court finds none of the Defendants had sufficient minimum contacts with Texas, nor would any possible contacts have given rise to this claim such that any of the Defendants should be subject to suit in Texas for fraud.

### c.    Negligent Misrepresentation

Plaintiffs allege all their factual allegations amount to negligent misrepresentation by all the Defendants which caused Plaintiffs damages.  Plaintiffs point the Court to no specific contact any Defendant had with Texas which gave rise to this cause of action. Instead, Plaintiffs simply assert that "all of the above constitutes negligent misrepresentation."

Again, Plaintiffs fail to set forth any elements of this cause of action as well as fail to indicate what conduct forms the basis of this claim.  The elements of a negligent misrepresentation claim under Texas law are as follows: (1) the defendant provided information in the course of his business, or in a transaction in which he had a pecuniary interest; (2) the information given was false; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; (4) the plaintiff justifiably relied on the information; and (5) the plaintiff suffered damages proximately caused by the reliance.  *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

Plaintiffs bear the burden of establishing specific jurisdiction as to each of these Defendants and as to each claim.  *See Calder*, 465 U.S. at 790 (multiple defendants); *Siefeth*, 472 F.3d at 275 (multiple causes of action).  In this instance, Plaintiffs fail to carry their burden.  Plaintiffs' complaint does not specify which activity or conduct forms

the basis of this claim, and Plaintiffs responsive briefing offers no more insight.  The Court generously sifted through the complaint to locate any contacts which could have given rise to this claim, even though Plaintiffs bore the burden of providing this information in the first place.

As previously discussed at length, no contacts of a third-party which Plaintiffs seek to impute through agency can be imputed to any Defendant.  Again, forced to give a very generous and liberal construction to the complaint, the Court concludes the only possible activity related to this negligent misrepresentation claim involves Defendants Halpern and Denny.  Plaintiffs allege Defendants Halpern and Denny distributed or caused to be distributed a Uniform Franchise Offering Circular ("UFOC") containing their names and false disclosures which was circulated in Texas.  This activity, however, falls far short for several reasons.  First, Plaintiffs submit no evidence sufficiently establishing that Defendants Halpern and Denny themselves knowingly inserted their names in this UFOC and that this was not the action of a third-party.  *See Hanson*, 357 U.S. 253 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."); *see also Helicopteros*, 466 U.S. at 417 ("Such unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.").  Accordingly, the Court would be hard-pressed to conclude that this activity was a sufficient contact with Texas.  Furthermore, Plaintiffs do not identify for the Court what specific information was false.

In fact, Plaintiffs do not even produce this UFOC.  Plaintiffs also make no allegations or provide any evidence that they actually relied upon this UFOC and the information contained therein, a required element of negligent misrepresentation.  There is no allegation Plaintiffs saw this UFOC before they entered into their franchise agreement. Nothing related to this UFOC as alleged and presented by Plaintiffs establishes that this action would give rise to negligent misrepresentation.

As for the Vendomation Defendants, even giving a liberal construction to the complaint, there are no allegations directly tying the Vendomation Defendants to any negligent misrepresentation in any way.

The Court finds none of the Defendants had sufficient contacts with Texas, nor any possible contacts which would have given rise to this claim such that any of the Defendants should be subject to suit in Texas for negligent misrepresentation.

<u>d)</u>      Civil Conspiracy and Aiding and Abetting

Plaintiffs allege all their factual allegations constitute a civil conspiracy to commit the fraudulent transfer and fraud by all the Defendants, as well as establishing aiding and abetting by all or some of the Defendants.  Once more, Plaintiffs fail to allege any specific conduct which constitutes the conspiracy and/or aiding and abetting; they assert simply incorporate "all of the above" factual allegations as substantiation of their claim.

Plaintiffs again fail to set forth any elements of either claim.  Texas law is well-established that civil conspiracy is a derivative claim and there is no independent liability; the plaintiff must show the defendant's liability for an underlying tort. *See Four Bros. Boat*

ORDER – PAGE 27

*Works, Inc. v. Tesoro Petroleum Companies, Inc.*, 217 S.W.3d 653, 668 (Tex. App.—Houston

[14th Dist.] 2006, no pet.)(citing *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996)).

Accordingly, if the underlying tort claim fails, the conspiracy claim must also fail as a

matter of law. *Brewer v. Capital Cities/ABC, Inc.*, 986 S.W.2d 636, 642 (Tex. App.—Fort

Worth 1998, no pet.).   The Court has found that personal jurisdiction cannot be

exercised as to any of these Defendants for the underlying tort claims of fraudulent

transfer, fraud, or negligent misrepresentation.   Accordingly, the Court cannot exercise

personal jurisdiction over these Defendants for the civil conspiracy claim as a matter of

law. *See id.*

As for aiding and abetting, the Texas Supreme Court is undecided as to whether

such a claim  is viable in Texas. *Juhl v. Airington*, 936 S.W.2d 640, 643 (Tex. 1996); *see

also Span Enterprises v. Wood*, 274 S.W.3d 854, 859 (Tex. App.—Houston [1st Dist.]

2008, no pet.)("[I]t is not settled whether 'Knowing Participation/Aiding and Abetting'

fraud is a viable cause of action in Texas.").   Even if it were a viable claim, there is no

indication from the Texas Supreme Court that it would not also be a derivative claim.

The Court finds that as a matter of law it may not exercise personal jurisdiction

over any of these Defendants on the claim of civil conspiracy/aiding and abetting.

In response to all of Defendants' motions, Plaintiffs argue that because this Court

has denied Defendants' prior motions to dismiss, the Court has already ruled on the

merits of these arguments and they are, in effect, "moot."   This argument is absolutely

incongruous, and finding any merit in it would mean this Court could never revisit its

prior rulings.  It also ignores Fifth Circuit opinions which hold that a judgment entered without personal jurisdiction is void, therefore a district court has a duty to ensure it has the power to enter a valid judgment, and commits no error in raising that issue *sua sponte*. *See Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001); *Broadcast Music, Inc. v. M.T.S. Enterprises, Inc.*, 811 F.2d 278, 281 (5 Cir. 1987).

In conclusion, this Court cannot exercise personal jurisdiction, general or specific, as to Defendant Halpern, Defendant Denny, Defendant VSL, Defendant Vendomation, LLC, or Defendant Vendomation NZ, Limited.

**B.   Jurisdictional Discovery**

Within their response to the motions to dismiss, Plaintiffs move for jurisdictional discovery and an evidentiary hearing.  The Court **denies** Plaintiffs' request to conduct jurisdictional discovery and for a hearing.  This Court has broad discretion in deciding whether to allow a party to conduct jurisdictional discovery.  *See Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982).  A plaintiff must first make a "preliminary showing of jurisdiction" to be entitled to conduct jurisdictional discovery.  *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005); *see Freeman v. US*, 556 F.3d 326, 341 (5th Cir.), *cert. denied*, — U.S. —, 130 S.Ct. 154, (2009) ("The party seeking discovery bears the burden of showing its necessity.").  The plaintiff must put forward what facts she believes discovery would reveal and how those facts would support personal jurisdiction. *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000).  "When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be

permitted." *Wyatt*, 686 F.2d at 284.  The Fifth Circuit has upheld a district court's denial of jurisdictional discovery when such discovery "could not have added any significant facts." *Id.*

Despite several opportunities to replead, the Court concludes Plaintiffs failed to make a preliminary showing of jurisdiction as required to be entitled to jurisdictional discovery. *See Fielding*, 415 F.3d at 429.  As previously discussed at length, Plaintiffs did not provide evidence that any Defendant had sufficient minimum contacts with Texas to establish specific personal jurisdiction, and general jurisdiction does not exist either. Moreover, Plaintiffs wholly failed to make any showing of what facts they believe discovery would reveal and how those facts would support the exercise of personal jurisdiction of any of the Defendants.  Plaintiffs make the following statement in support of their request: "Because of the complex and convoluted nature of Moving Defendants' actions to cover up their wrong doing, Plaintiffs move for appropriate jurisdictional discovery and an evidentiary hearing in the event that Plaintiff's response and [Fourth] Amended [Complaint] are not sufficient to defeat defendants' motions."  This statement is accompanied by citations to a Tenth Circuit case and a Connecticut district court case. At best, this statement is nothing more than vague or conclusory assertions for the need for jurisdictional discovery.  *See Reese v. Anderson*, 926 F.2d 494, 499 n. 5 (5th Cir. 1991)("Vague assertions of the need for additional discovery are as unavailing as vague responses on the merits."); *see also Marine Geotechnics, LLC v. Williams*, No. H-07-3499, 2009 WL 2144358, at *5 (S.D. Tex. July 13, 2009)(internal citation omitted)(court

should grant plaintiff the right to conduct jurisdictional discovery where plaintiff "presents factual allegations that suggest 'with reasonable particularity' the possibly existence of the requisite 'contacts between [the party] and the forum state'".)  Here. Plaintiffs failed to put forth the facts they believed discovery would reveal and how those facts would support personal jurisdiction as to these Defendants.  *See Kelly*, 213 F.3d at 855.  Based upon the record, the Court concludes the lack of personal jurisdiction is clear, and discovery would not add any significant facts.  *See Wyatt*, 686 F.2d at 284.

C.     Conclusion

For the foregoing reasons, the Court finds it cannot exercise personal jurisdiction over any remaining Defendant in this case.  There is no support for exercising general jurisdiction or specific jurisdiction as to Defendant Halpern, Defendant Denny, Defendant Vendomation LLC, Defendant VSL, or Defendant Vendomation NZ.  This case is **dismissed for lack of personal jurisdiction as to all remaining Defendants**. The Court need not address any alternative grounds for dismissal, nor any other pending motions.

**SO ORDERED.**

Signed August 27th, 2012.

*Ed Kinkeade*
_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE